UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ASHLEY NICHOLE GAMBRIEL, | : | CIVIL NO: 1:20-CV-01393 |
| Plaintiff, | : | (Magistrate Judge Schwab) |
| v. | : | |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,[1] | : | |
| Defendant. | : | |

# MEMORANDUM OPINION

## I. Introduction.

This is a social security action brought under 42 U.S.C. § 405(g). The plaintiff, Ashley Nichole Gambriel ("Gambriel"), seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Social Security Disability benefits. We have jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons set forth below, the

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

Commissioner's decision will be affirmed, and judgment will be entered in favor of the Commissioner.

## II. Background and Procedural History.

We refer to the transcript provided by the Commissioner. *See docs. 11-1* to *11-13*.[2] On August 6, 2017, Gambriel protectively filed[3] a Title II application for disability and a Title XVI application for supplemental security income, contending that she became disabled on September 11, 2015. *Admin. Tr.* at 16. This alleged onset date was later amended at the hearing to December 29, 2016. *Id.* After the Commissioner denied her applications at the initial level of administrative review, Gambriel requested an administrative hearing. *Id.* And on April 16, 2019, with the assistance of counsel, she testified at a video hearing before Administrative Law Judge ("ALJ") Daniel Balutis. *Id.* at 31-77.

The ALJ determined that Gambriel had not been disabled from December 29, 2016, the amended alleged onset date, through the date of his decision on April

---

[2] Because the facts of this case are well known to the parties, we do not repeat them here in detail. Instead, we recite only those facts that bear on Gambriel's claims.

[3] "Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits." *Stitzel v. Berryhill*, No. 3:16-cv-0391, 2017 WL 5559918, at *1 n.3 (M.D. Pa. Nov. 9, 2017). "A protective filing date allows an individual to have an earlier application date than the date the application is actually signed." *Id.*

26, 2019. *Id*. at 25.  And so he denied Gambriel benefits. *Id*.  Gambriel appealed the ALJ's decision to the Appeals Council who granted her more time to submit information. *Id.* at 8-9.  On or about July 25, 2019, Gambriel, through counsel, submitted a report from treating physician's assistant Michelle Day.  *Id.* at 7.  On June 10, 2020, however, the Appeals Council denied Gambriel's request for review (*id.* at 1–3), which had the effect of making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court.

In August of 2020, Gambriel began this action by filing a complaint claiming that the Commissioner's decision is not supported by substantial evidence and contains errors of law. *Doc. 1* at ¶ 8.  She requests that the court remand the case for further hearing, award attorneys' fees, and grant her other just and proper relief. *Id*. at 3 (Wherefore Clause).

After the Commissioner filed an answer and a certified transcript of the administrative proceedings, *docs. 10, 11*, the parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned, *doc. 13*.  The parties then filed briefs, *see docs. 14*, *15*, and this matter is ripe for decision.

### III. Legal Standards.

#### A. Substantial Evidence Review—the Role of This Court.

When reviewing the Commissioner's final decision denying a claimant's application for benefits, "the court has plenary review of all legal issues decided by the Commissioner." *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). But the court's review of the Commissioner's factual findings is limited to whether substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

Substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's] finding

from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D. Pa. 2003).

The question before this court, therefore, is not whether Gambriel was disabled, but whether substantial evidence supports the Commissioner's finding that she was not disabled and whether the Commissioner correctly applied the relevant law.

### B.  Initial Burdens of Proof, Persuasion, and Articulation for the ALJ.

To receive benefits under Title II or Title XVI of the Social Security Act, a claimant generally must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. §1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

The ALJ follows a five-step sequential-evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920. Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience, and residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The ALJ must also assess a claimant's RFC at step four. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 198 n.2 (3d Cir. 2019). The RFC is "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett v Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairment identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

"The claimant bears the burden of proof at steps one through four" of the sequential-evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d

Cir. 2010). But at step five, "the burden of production shifts to the Commissioner, who must . . . show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity." *Fargnoli v. Massanari*, 247 F.3d 34, 39 (3d Cir. 2001).

The ALJ's disability determination must also meet certain basic substantive requisites. Most significantly, the ALJ must provide "a clear and satisfactory explication of the basis on which" his or her decision rests. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). "The ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F. 3d 429, 433 (3d Cir. 1999). The "ALJ may not reject pertinent or probative evidence without explanation." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Otherwise, "'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Burnett*, 220 F.3d at 121 (quoting *Cotter*, 642 F.2d at 705).

## IV. The ALJ's Decision.

On April 26, 2019, the ALJ denied Gambriel's claims for benefits. *Admin. Tr.* at 16-25. At step one of the sequential-evaluation process, the ALJ found that Gambriel had not engaged in substantial gainful activity since December 29, 2016,

the alleged onset date. *Id.* at 19.  In this regard, the ALJ noted that although Gambriel had briefly worked in 2017, this work was not substantial gainful activity. *Id.*

At step two of the sequential-evaluation process, the ALJ found that Gambriel has the following severe impairments:  a protein S deficiency and chronic deep venous thrombosis of the lower extremities. *Id.*  The ALJ also noted that Gambriel presented with a history of mild spondylosis of the thoracic spine and mild dextroscoliosis, a right ovarian cyst, carcinoma in situ, and cervical dysplasia, but he concluded that those impairments are not severe impairments. *Id.*

At step three of the sequential-evaluation process, the ALJ found that Gambriel did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*  Specifically, the ALJ discussed Listing 4.11 in connection with Gambriel's vascular condition and determined that Gambriel did not meet the requirements for that listing or any of the listings in sections 4.00 *et. seq.* *Id.*

The ALJ then determined that Gambriel has the RFC to perform light work[4] with some limitations. *Id.* at 20.  She can never climb ladders, ropes, or scaffolds,

---

[4] *See* 20 C.F.R. §§ 404.1567(b), 416.967(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To

and she must avoid hazards such as unprotected heights and dangerous moving machinery. *Id*. In making this RFC assessment, the ALJ reviewed Gambriel's assertions and testimony regarding her impairments and limitations. *Id.* at 20-21. He also considered her medical opinions and prior administrative medical findings and her husband's testimony. *Id.* at 21-23.

At step four of the sequential-evaluation process, the ALJ found that Gambriel is capable of performing her past relevant work as a medical assistant in either a nursing home or doctor's office. *Id.* at 23. At step five of the sequential-evaluation process, the ALJ alternatively opined that there are other jobs that exist in the state and national economy that Gambriel is capable of performing. *Id*. Considering Gambriel's age, education, work experience, and RFC, as well as the testimony of a vocational expert, the ALJ found that Gambriel could perform as an administrative support worker, a counter clerk, general office clerk, and cashier. *Id*. at 23–25. In sum, the ALJ concluded that Gambriel was not disabled from December 29, 2016, through the date of his decision on April 26, 2019. *Id*. at 25.

---

be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

**V.  Discussion.**

Gambriel raises the following two claims on appeal: (1) that the ALJ erred in relying on outdated and unreliable medical opinion evidence in formulating Gambriel's RFC; and (2) that the ALJ erred in not requesting a consultative examination.

### A.  The ALJ did not err in his consideration of medical opinion evidence.

Initially, but without elaboration or support, Gambriel contends that the ALJ cites as medical opinion evidence the testimony of her husband at the hearing. *Doc. 14* at 6-7.  It appears that Gambriel is basing this contention on the ordering of the ALJ's paragraphs and the fact that his discussion of the husband's testimony follows the last sentence of the previous paragraph wherein the ALJ references his consideration of medical opinions and prior administrative medical findings to follow.  Simply put, this is meritless.  Moreover, identifying this as an issue of error only serves to heap a further burden on the Social Security Appeal process, a process that is already stressed with an enormous docket that requires considerable party and judicial resources.  Counsel is cautioned to stick to substantive claims of error in the future.

### B. The ALJ did not rely on outdated and unreliable medical opinion evidence in forming the RFC.

Next, Gambriel asserts that the ALJ failed to consider the statements of her treating medical providers, namely Michelle Day, PA-C ("Day") and others at Penn State Hershey. Additionally, Gambriel argues that the ALJ improperly relied on the state agency physical assessment of Carl Bancoff, M.D. ("Dr. Bancoff").

Because Gambriel's claims concern the ALJ's handling of opinion evidence, we start with a brief overview of the regulations regarding opinion evidence. The regulations in this regard are different for claims filed before March 27, 2017, on the one hand, and for claims, like Gambriel's, filed on or after March 27, 2017, on the other hand. Specifically, the regulations applicable to claims filed on or after March 27, 2017, ("the new regulations") changed the way the Commissioner considers medical opinion evidence and eliminated the provision in the regulations applicable to claims filed before March 27, 2017, ("the old regulations") that granted special deference to opinions of treating physicians.

The new regulations have been described as a "paradigm shift" in the way medical opinions are evaluated. *Densberger v. Saul*, No. 1:20-cv-772, 2021 WL 1172982, at *7 (M.D. Pa. Mar. 29, 2021). Under the old regulations, "ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Id*. But under the new regulations, "[t]he range of opinions that

11

ALJs were enjoined to consider were broadened substantially and the approach to evaluating opinions was changed from a hierarchical form of review to a more holistic analysis." *Id*.

Under the old regulations, the ALJ assigns the weight he or she gives to a medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). And if "a treating source's medical opinions on the issue(s) of the nature and severity of [a claimant's] impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," the Commissioner "will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under the old regulations, where the Commissioner does not give a treating source's medical opinion controlling weight, it analyzes the opinion in accordance with a number of factors: the "[l]ength of the treatment relationship and the frequency of examination," the "[n]ature and extent of the treatment relationship," the "[s]upportability" of the opinion, the "[c]onsistency" of the opinion with the record as whole, the "[s]pecialization" of the treating source, and any other relevant factors. *Id*. at §§ 404.1527(c)(2)–(c)(6), 416.927(c)(2)–(c)(6).

Under the new regulations, however, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the

12

claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  And the Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  As to supportability, the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  And as to consistency, those regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior

administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors. *Id*. But if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

Gambriel argues that the ALJ erred when he failed to consider Day's medical opinion. *Doc. 14* at 7. Specifically, Gambriel contends that the ALJ did not analyze Day's letter report dated June 5, 2019. *Admin. Tr.* at 11-12. As the Commissioner correctly notes, Day's opinion was authored after the ALJ issued his decision. *Id.* at 25. Thus, the ALJ could not have considered Day's report at the time of his decision. Gambriel did submit the report on or about July 25, 2019; however, the Appeal Counsel declined to review. *Id*. at 1-7. To the extent that Gambriel seeks to argue that we should now consider Day's report, she must satisfy certain elements.

"If the claimant proffers evidence in the district court that was not previously presented to the ALJ, then the district court may remand to the

14

Commissioner but that disposition is governed by Sentence Six of § 405(g)." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The sentence six remand procedure requires a claimant to show (1) the additional evidence is new, (2) the additional evidence is material, and (3) good cause exists for not having timely submitted the evidence to the ALJ. *Id*. The Supreme Court has held that new evidence must "not [be] in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Additionally, "[t]he new evidence must also be material and should therefore 'shed light upon the case in a relevant manner to the extent that there is a 'reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination.'" *Tursky v. Colvin*, No. 14-cv-03241, 2015 WL 4064707, at *24 (D.N.J. July 2, 2015) (quoting *Szubak v. Secretary of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

    The Commissioner argues that Gambriel has not satisfied all three elements; we agree. Regarding whether Day's report should be considered new, Gambriel fails to contend that the report was somehow unavailable at the time of the administrative proceeding. Indeed, nothing in Day's report relates to information that was unavailable at the time of the administrative proceeding. *See Admin. Tr.* at 11-12. Thus, Day's report fails to satisfy the first element of the sentence six remand procedure. Because Gambriel must satisfy all three elements, we need not

conduct a full analysis of the remaining two elements.[5]  Accordingly, Gambriel fails to satisfy all three elements of the sentence six remand procedure, therefore, we will not consider Day's report.

Gambriel also argues that the ALJ should have considered additional statements provided by Day and other Penn State Hershey healthcare providers. *Doc. 14* at 7-8.  Specifically, Gambriel contends that her medical providers informed her to "remain hypervigilant assessing for signs or symptoms of recurrent venous thromboembolism or abnormal bleeding and seek emergent medical treatment should she develop any." *Id*. at 7 (citing *Admin. Tr.* at 686).  Gambriel argues that statement relates to her ability to perform the physical and mental demands of work and thus, constitutes a medical opinion. *Doc. 14* at 7.

As the Commissioner correctly notes, the new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2).  Observations of symptoms and diagnoses without an opinion of functionality are not considered medical opinions. *See Jennifer B. v. Kijakazi*, No. 1:20-cv-20364, 2022 WL 577960, at *11

---

[5] For the sake of completeness, we note that there exists a possibility that Day's report could have changed the outcome of the determination; however, Gambriel fails to provide "good cause" for not obtaining the letter before the ALJ's decision.

(D.N.J. Feb. 25, 2022) ("[T]hese statements reflect Plaintiff's subjective statements, diagnoses, and medical treatment and are not opinions of functionality, or statements of those activities that Plaintiff can or cannot perform in a work setting. The ALJ was therefore not required to assess the persuasiveness or supportability of these statements."); *see also Scheel v. Comm'r of Soc. Sec.*, No. 20-cv-5077, 2021 WL 4477163, at *4 (E.D. Pa. Sept. 30, 2021) (finding that the ALJ was not required to evaluate a doctor's letter that did not opine on the plaintiff's functional limitations).

Accordingly, because the statements by Day and the Penn State Hershey healthcare providers did not discuss what Gambriel can still do despite her impairments, we find that they do not qualify as medical opinions. An ALJ is not required to evaluate the persuasiveness of a report that does not fall within the scope of 20 C.F.R. § 416.920c. *See Swank v. Saul*, No. 2:19-cv-1484, 2021 WL 1143608, at *5 (W.D. Pa. Mar. 25, 2021) (finding that a doctor's treatment notes did not constitute a medical opinion, and thus, the ALJ was not required to evaluate the persuasiveness of the treatment notes). Therefore, the ALJ was not required to analyze Day's and the Penn State Hershey healthcare providers' statements.

### C. The ALJ did not err in failing to order a consultative examination and in finding Dr. Bancoff's opinion persuasive.

Gambriel argues that the ALJ should have requested a consultative examination due to the inconsistencies between her treating providers' findings and that of Dr. Bancoff. Alternatively, she argues that the medical record was insufficiently developed.

There is no requirement in this setting that the ALJ affirmatively seek out additional medical opinions or order further consultative examinations. Rather, it is well-settled under the Social Security Regulations that the decision to seek out further medical advice rests in the sound discretion of the ALJ, *see Rosa v. Colvin*, 956 F.Supp.2d 617, 622 (E.D. Pa. 2013), and that an "ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability determination." *Thompson v. Halter*, 45 F.App'x 146, 149 (3d Cir. 2002); *see also Mruk v. Colvin*, No. 3:13-cv-321, 2014 WL 3881976, at *7 (M.D. Pa. Aug. 7, 2014); *see also Kenyon v. Colvin*, No. 3:12-cv-1812, 2013 WL 6628057, at *5 (M.D. Pa. Dec. 16, 2013) ("While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant."). In the instant case, there was no need to further develop the medical opinion evidence relating to the plaintiff's physical impairments.

Additionally, Gambriel argues that the ALJ erred in finding Dr. Bancoff's opinion persuasive. Specifically, Gambriel contends that Dr. Bancoff's assessment was outdated and the ALJ should have considered more recent record evidence. We find Gambriel's argument unpersuasive. As the Commissioner correctly notes, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). "Only where 'additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required." *Id.* (quoting SSR 96-6p, 1996 SSR LEXIS 3 (July 2, 1996)). Gambriel fails to argue what additional medical evidence points to a material change after Dr. Bancoff reviewed her records. Accordingly, we find that ALJ did not err in finding Dr. Bancoff's opinion persuasive.

## VI. Conclusion.

For the foregoing reasons, the decision of the Commissioner will be affirmed, and final judgment will be entered in favor of the Commissioner and against Gambriel. An appropriate order follows.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge